# IN THE UNITED STATES DISTRICT COURT
# FOR DISTRICT OF COLORADO

Civil Action No. _____

FRANKLIN E. WALTER, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

CENTURA HEALTH CORPORATION, a Colorado nonprofit corporation,

    Defendant.

## CLASS ACTION COMPLAINT

Plaintiff Franklin E. Walter, individually and on behalf of all others similarly situated, upon personal knowledge of facts pertaining to himself and on information and belief as to all other matters, by and through undersigned counsel, brings this Class Action Complaint against defendant Centura Health Corporation ("defendant" or "Centura").

## NATURE OF ACTION

1. This is a consumer class action arising from Centura' systematic breach of its medical services contracts with patients. Centura's contract requires that it provide most non-emergency patients at or before the time of medical treatment with an estimate of the amount the patient will have to pay out of pocket for the procedure, after third party payors such as Medicare and private insurance pay the amounts they cover. These amounts are readily estimated and well known to Centura, but it does not state any amount is owed at the time of or before the treatment. Instead, weeks after the procedure, Centura bills patients, demanding they pay out of pocket amounts that should have previously been disclosed. Further, if payment is not made, Centura aggressively threatens and then begins collection.

2. This practice prevents patients from knowing what they will owe, leading to unexpected expenses and for many, financial hardship. It also prevents patients from shopping around for more cost-effective treatment or holding off elective procedures until they can better afford it. The practice also allows Centura to reduce transparency regarding its billing practices and to charge outrageous amounts for items such as routine medication, over the counter pain relievers, and vitamins.

3. As a result of Centura's failure to provide a timely estimate, patients do not owe the amounts that were readily capable of estimation and not disclosed, but later billed. This

action seeks the repayment of the amounts taken in breach of contract and for an injunction prohibiting Centura from engaging in this unfair business practice. Plaintiff brings this class action on behalf of himself and all similarly situated persons who received non-emergency medical care from a Centura facility, but did not receive an estimated patient responsibility statement at the time of or before the medical care was provided, but were charged the known amount after the medical care was provided. Plaintiff seeks damages, injunctive and declaratory relief.

**PARTIES**

4.      Plaintiff Walter is a resident of Flora Vista, New Mexico. Between April 25, 2019, and April 27, 2019, Mr. Walter underwent surgery and treatment for a knee replacement at Mercy Regional Medical Center, a hospital managed and operated by Centura within its wide hospital network. To receive the knee surgery, Mr. Walter, like all similarly situated Centura patients, had to sign an adhesion contract called "Consent for Medical Treatment" that required him to agree to pay all known and unknown costs as a condition to receiving the treatment, including undisclosed charges not covered by his insurance. The contract also required Centura to provide to Mr. Walter (before the procedure was performed) the estimated amount he would have to pay out of pocket. In part, this is a protection for Mr. Walter and other patients against unexpected bills and over-billing. Centura never provided Mr. Walter with an estimate of out-of-pocket charges, thereby indicating Mr. Walter would owe nothing out of pocket (unless something unanticipated happened during this routine procedure). Instead, two months after his procedure, Mr. Walter received a statement of charges arising from the April 2019 knee surgery. Without prior notice or consent and without an explanation or itemized statement, Mr. Walter

was told he must pay defendant an additional $1,216.73 for his knee surgery. Had Mr. Walter known the true facts about Defendants' acts and omissions, he would have used or at least explored using the San Juan Regional Medical Center in Farmington, New Mexico.

5. Defendant Centura Health Corporation is a Colorado nonprofit corporation headquartered in Centennial, Colorado. Centura was formed by Adventist Health System, a large nonprofit health system on the West Coast and Hawaii, and Catholic Health Initiatives, the third-largest nonprofit health system in the nation. Catholic Health Initiatives owns Mercy Regional Medical Center ("Mercy"), where plaintiff was treated and hospitalized in April 2019, as well as Mercy Orthopedic Associates, a physician group where Mr. Walter was diagnosed and where his surgery was recommended. Centura manages and operates a network of health centers, "mountain" clinics, and urgent and emergency care facilities that include more than 100 physician practices and seventeen hospitals throughout Colorado and Kansas, including Mercy and Mercy Orthopedic Associates. Centura contracted with plaintiff through Centura Health Physician Group, one of seventy-seven trade names (Colorado Secretary of State ID No. 20121363641) defendant uses to conduct business. In 2018, Centura's total revenues exceeded $424 million and it paid more than $11 million in executive compensation.

## JURISDICTION AND VENUE

6. The Court has original jurisdiction under 28 U.S.C. § 1332(d)(2) because the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members, and some of the members of the class are citizens of states different from defendant.

7. This Court has personal jurisdiction over defendant because defendant is a citizen of the State in which this District is located and resides within this District.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because defendant resides in Colorado and because a substantial part of the events and omissions giving rise to plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

9. Throughout its network, Centura requires patients to enter into an adhesion contract before it provides any non-emergency medical treatment. The contract places a number of responsibilities on the patients, while imposing relatively few obligations on Centura. It does, however, provide limited protections for the patient against unexpected charges and over-billing. Paragraph 4 of the contract, entitled "Financial Agreement," requires Centura to provide to patients (in advance of treatment) an estimate of the amount of money the patient will personally have to pay for the treatment, known as the estimated patient responsibility amount. The provision states: "I acknowledge that estimated patient responsibility is due at the time of service and that any remaining charges are due and payable upon receipt of the bill." On its website, defendant reiterates its obligation to tell patients the amount they owe at or before the time of treatment and that Centura is entitled to collect these amounts at that time: "Centura Health requires that payment be made at the time of service for any amount not covered by insurance. Insurance deductibles and co-payments are due at the time of service."[1]

10. Most of the time, the full amount of the patient responsibility is known ahead of treatment. The cost of the procedure, medications, lab charges, health care provider charges and

---

[1] https://www.centura.org/patients-and-families/billing-and-financial-services (last visited Jan. 7, 2020).

other charges are known in advance. For example, plaintiff's insurer, Blue Cross, requires healthcare providers, like defendant, to obtain precertification authorization to determine whether a part or the entire cost of treatment or procedure will be covered by the insurer. Only when something unexpected occurs during the procedure or aftercare are additional, unexpected amounts incurred. Even then, the additional amounts are typically a small amount of the overall amount owed by the patient. Meanwhile, the anticipated amount to be reimbursed by the insurer is known.

11. Knowing in advance the patient's responsibility allows the patient to determine whether he or she can afford the procedure at that time, financially plan to pay for the procedure, avoid most unexpected charges, guard against overbilling and, in many instances, to shop around to obtain the best price for the medical care. It also allows the patient to be fully informed about his or her financial responsibility and the practices Centura follows in administering care, such as whether patients may use their own medications while at a Centura facility or be forced to pay Centura for the same medication and, if so, the price of that medication.

12. However, Centura does not provide patients, including plaintiff, with an estimated financial responsibility before the procedure. That is, as far as patients know, the amount Centura estimates the patient will owe out of pocket is zero. In reality, and in breach of contract, Centura does not disclose the known estimated out of pocket patient responsibility, and instead charges patients this amount after the procedure, in a way that makes it impossible for the patient to determine the basis or accuracy of the charges.

13. Reinforcing the fact that Centura's estimate for patients' financial responsibility is zero, Centura's contracts incorporate by reference defendant's "fee schedule." Its Centura Health

Physician Group contract states it has "pre-determined the charges for certain procedures, supplies, and treatments, that these charges are listed in the Centura Health Physician Group fee schedule and that these prices are incorporated by reference into this Contract." No fee schedule, however, is accessible to the patient.

14. Even if a patient were to find out, he or she would not be able to. An internet search for "Centura Health Physician Group fee schedule" generates links to defendant's "Pricing" webpage. However, consistent with its practice, the "Pricing" webpage does not provide any pricing information or links to anything titled or referred to as the "fee schedule." It provides further links to "Hospital Prices" and "Physician Prices" webpages. The Hospital Prices and Physician Prices webpages give patients an option to "Look Up Costs," but this option does not provide a list of individual hospitals or physicians, it lists counties, again with no reference to a "fee schedule."

15. If a patient knows the county where they will be treated and who will be charging for the treatment, they may be able to navigate to yet another webpage that lists "test/procedure costs" for their hospital or physician. Again, consistent with its practice, these pages do not contain anything titled or referred to as a "fee schedule." Instead, the webpages list a small number of procedures. A patient like Mr. Walter, whose April 2019 procedure was listed as "arthroplasty," will not find it as one of the "test/procedure costs" on defendant's website.

16. While there are no "fee schedules" available to Centura's patients, Centura provides several Chargemasters for the counties in which its facilities are located. A Chargemaster is a comprehensive listing of items billable to a hospital patient or patient's insurance provider. It typically contains highly inflated prices which hospitals use to begin price

7

negotiations with insurance providers. The Chargemaster for Mercy Regional Medical Center is an Excel spreadsheet with 2,318 line items, each of which is described using defendant's proprietary terminology, and again does not list a price of an "arthroplasty." Defendant's Chargemaster for Mercy also does not provide a list of costs of even the most common, frequently used medications administered to its patients.

17. Centura charges its patients after the fact for prescription and over-the-counter medications at prices that are wholly arbitrary and grossly inflated over the price a patient would pay, or has already paid at a pharmacy. For example, medications are often triple, quadruple, or more than the full retail price, and include costs that exceed amounts a third-party payor will pay for them.

18. For example, during plaintiff's stay at Mercy, defendant charged $39 for thirteen 500 mg Acetaminophen pills, when a 200-pill container costs approximately $5 at most pharmacies. That is an upcharge of several thousand percent per pill. The Chargemasters only complicate matters. Mercy's Chargemaster lists only "HC Acetaminophen 80329" for the price of $190.69. There is no obvious correlation between the Chargemaster and the sum charged based on plaintiff's treatment.

19. On its website, Centura acknowledges "Consumers should have accurate and easy-to-understand information to make the best health care decisions for themselves and their families."[2] However, Centura does not practice what it preaches: as part of its more egregious practices, defendant charges patients who are required to stay at its hospitals overnight for

---

[2] https://www.centura.org/patients-and-families/pricing/resources-for-patients-and-consumers (last visited Nov. 11, 2019).

8

medications unrelated to the treatment at defendant's hospitals, yet required for ongoing treatment or management of other medical conditions ("Outside Medications").

20. As a result of its pre-operation procedures, defendant knows the Outside Medications each patient will need to take during the patients' time at a Centura facility in advance of the time medical procedure is performed. In fact, it must determine how these medications react with any medications, including any anesthetic administered as part of the medical procedure and ensure any such medication is provided to the patient while in Centura's care. During his preadmission process, Centura asked plaintiff for a list of his current Outside Medications. Defendant knows the exact dosage and frequency of administration for each of its patient's Outside Medications.

21. Centura also knows whether an insurer will reimburse a patient for any Outside Medications a patient must take and which the health care provider must administer during the patient's treatment and hospitalization. In fact, the Centers for Medicaid and Medicare Services, which administers the nation's major health care programs, including Medicare, does not reimburse a patient for any Outside Medications, which it previously paid for, even when the same medications are administered by a healthcare provider during treatment and hospitalization.

22. Although this is known to Centura, it does not provide this information to its patients before they agree to a procedure and the necessary hospital stay. Patients must continue to take their Outside Medications while in defendant's care, so Centura charges them after the fact above market, exorbitant and arbitrary amounts for each dose of an Outside Medication administered during the hospital stay.

23. Plaintiff seeks, on his own behalf and on behalf of all other similarly situated individuals, damages, restitution, and declaratory and injunctive relief to define the parties' rights and obligations and to stop Centura's ongoing misconduct.

## CLASS DEFINITION AND ALLEGATIONS

24. Plaintiff brings this action on behalf of himself and all other similarly situated consumers who received medical treatments at a Centura Health facility pursuant to Federal Rules of Civil Procedure rules 23(a), (b)(2) and (b)(3) and seeks certification of the following Class:

> All persons who, from February 7, 2017 until the date notice is provided to the Class, received non-emergency medical care from a Centura facility, but did not receive an estimated patient responsibility statement at the time of or before the medical care was provided, and were charged the known amount after the medical care was provided.

Excluded from the Class are defendant's affiliates, officers, and directors, all persons who make a timely election to be excluded from the Class, the judge to whom this case is assigned and any immediate family members thereof, and those who assert claims for personal injury or medical malpractice.

25. Certification of plaintiff's claims for classwide treatment is appropriate because each of the applicable requirements of Federal Rule of Civil Procedure 23(a) and (b)(3) are met.

26. **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Class are so numerous that individual joinder of all Class members is impracticable. Defendant has treated many thousands of putative class members as patients in its facilities.

27. **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact which predominate over any questions affecting individual Class members, including, without limitation:

    a.    Whether the defendant engaged in the alleged conduct;

    b.    Whether defendant breached the contracts;

    c.    Whether plaintiff and other Class members have been injured and the proper measure of their losses as a result of those injuries;

    d.    Whether plaintiff and other Class members are entitled to injunctive, declaratory, or other equitable relief;

    e.    Whether defendant's conduct violates public policy;

28. **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of other Class members' claims because, among other things, all Class members were comparably injured through the uniform prohibited conduct described above.

29. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate representative of the Class because plaintiff's interests do not conflict with the interests of other Class members plaintiff seeks to represent; plaintiff has retained counsel competent and experienced in complex commercial and class action litigation; and plaintiff intends to prosecute this action vigorously. The interests of the Class members will be fairly and adequately protected by plaintiff and his counsel.

30. **Declaratory and Equitable Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendant has acted or refused to act on grounds generally applicable to plaintiff and other Class

members, thereby making appropriate final equitable relief and declaratory relief, as described below, with respect to the Class as a whole.

31. **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by plaintiff and other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against defendant, so it would be impracticable for the Class members to individually seek redress for defendant's wrongful conduct. Even if the Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CLAIMS ALLEGED

### Count I

### BREACH OF CONTRACT

32. Plaintiff incorporates Paragraphs 1 through 31 of this complaint, as though fully set forth herein.

33. Defendant entered into contracts with plaintiff and other Class members. The contracts required defendant to provide to plaintiff and other Class members at or before the time of the medical procedure the estimated patient responsibility for their medical treatment.

Defendant did not provide any estimate of patient responsibility to plaintiff and other Class members, thereby conceding that no such charges existed.

34. In breach of the contracts, defendant then billed plaintiff and other Class members after their medical treatment was provided for expenses it knew, or should have known, before the treatments.

35. As a result of defendant's breach of the medical services contracts, plaintiff and other Class members suffered damages in an amount to be determined at trial.

**Count II**

**BREACH OF CONTRACT: THE IMPLIED DUTY OF
GOOD FAITH AND FAIR DEALING**

36. Plaintiff incorporates Paragraphs 1 through 35 of this complaint, as though fully set forth herein.

37. Every contract contains an implied duty of good faith and fair dealing. Defendant entered into and is bound by the medical services contracts: valid and enforceable contracts that contain an implied duty of good faith and fair dealing.

38. Based on the terms of the contracts, as alleged herein, plaintiff and other Class members could justifiably expect defendant to provide to them an estimate of the amount they will have to pay out of pocket for the procedure, including costs of Outside Medications they would need in the course of their treatment at defendant's facilities.

39. Defendant had the exclusive power and ability to set the terms of plaintiff's and other Class members' treatment, as articulated in the contracts, including the amounts charged to plaintiff and other Class members for Outside Medications administered during their treatment.

40.     By failing to disclose to plaintiff and other Class members the estimate of the amount the patient will have to pay out of pocket for the procedure and Outside Medications, which defendant knew it would charge plaintiff and other Class members, defendant breached its implied duty of good faith and fair dealing, as it abused its power under the contracts and usurped the benefits of these agreements.

41.     As a direct and proximate result of defendant's breach of the contracts and its duty of good faith and fair dealing, as alleged herein, plaintiff and other Class members were forced to pay charges they would not have incurred had defendant provided them with an itemized list of charges and out-of-pocket expenses before plaintiff and other Class members entered into the contracts.

42.     Consequently, plaintiff, individually and on behalf of other Class members, seeks: (1) a declaration that defendant breached the contracts; (2) an order for specific performance compelling defendant to provide to its patients an itemized list of charges and out-of-pocket expenses, including charges for all known Outside Medications, that would have to be administered during the hospital stay but that would not qualify for private insurance or Medicare reimbursement, before or at the time a patient enters into contracts.

### Count III

### UNJUST ENRICHMENT

43.     Plaintiff incorporates Paragraphs 1 through 42 of this complaint, as though fully set forth herein.

44.     As a direct and proximate result of its failure to provide to plaintiff and the other Class members the estimate of the amount the patient will have to pay out of pocket for the

procedure and Outside Medications before plaintiff and the other Class members entered into the medical services contracts, Centura has profited through the sale of medical treatments at inflated prices.

45. This practice prevents patients from knowing what they will owe for their treatment, leading to unexpected expenses and for many, financial hardship. It also prevents patients from shopping around for more cost-effective treatment or holding off elective procedures until they can better afford it. The practice also allows Centura to reduce transparency regarding its billing practices and to charge outrageous amounts for items such as routine medication, over the counter pain relievers, and vitamins.

46. Centura has been unjustly enriched due to its failure to provide to plaintiff and the other Class members the estimate of the amount the patient will have to pay out of pocket for the procedure and Outside Medications before plaintiff and the other Class members entered into the medical services contracts, through money paid that earned interest or otherwise added to Centura's profits when it should have remained with plaintiffs and the other Class members.

47. As a result of Centura's unjust enrichment, plaintiffs and the other Class members have suffered damages.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

## REQUEST FOR RELIEF

WHEREFORE, plaintiff, individually and on behalf of other members of the proposed Classes, respectfully requests that the Court enter judgement in plaintiff's favor against defendant as follows:

A.      Declaring that this action is a proper class action, certifying the Class as requested herein, designating plaintiff as Class Representative and appointing the undersigned counsel as Class Counsel;

B.      Ordering injunctive relief as permitted by law or equity, including enjoining defendant from continuing the unlawful practices as set forth herein;

C.      Ordering defendant to pay attorneys' fees and litigation costs to plaintiff and other Class members;

D.      Ordering defendant to pay both pre- and post-judgment interest on any amounts awarded;

E.      Ordering defendant to pay to plaintiff and the other Class members restitution and disgorgement of monies Centura acquired through its violations of the law; and

F.      Ordering such other and further relief as may be just and proper.

Respectfully submitted,

Dated: June 12, 2020

By:  *s/ Jordon R. Harlan*

Jordon R. Harlan, Esq.
Harlan Law, PC
50 River Oaks Drive, Unit 115
Durango, Colorado 81303
Tel: (970) 462-9599 / (619) 870-0815
jordon@harlanpc.com

BLOOD HURST & O'REARDON, LLP
Timothy G. Blood
Aleksandr J. Yarmolinets
501 West Broadway, Suite 1490
San Diego, CA  92101
Tel: 619-338-1100
tblood@bholaw.com
ayarmolinets@bholaw.com

*Attorneys for Plaintiff Franklin E. Walter*