**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 20-cv-01752-PAB-NYW

FRANKLIN E. WALTER, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

CENTURA HEALTH CORPORATION, a Colorado nonprofit corporation,

    Defendant.

## MOTION TO DISMISS

Defendant Centura Health Corporation ("Centura"), by its attorneys, moves to dismiss under Fed.R.Civ.P. 12(b)(1) and 12(b)(6).[1]

### I.    STATEMENT OF THE CASE.

This is a putative class action. Plaintiff is a citizen of New Mexico.[2] *Dkt #8-1,* ¶ 2. Centura is a Colorado nonprofit corporation headquartered in Colorado that manages and operates a system of 17 hospitals in Colorado and Kansas. *Complaint,* ¶ 5. 15 of the 17 Centura hospitals are in Colorado (88.2%) and 2 are in Kansas. *Exhibit A - Affidavit of Kris Ordelheide*, ¶ 2. The putative class is defined as "All persons who, from February 7, 2017… received non-emergency medical care from a Centura facility but did not receive an estimated patient responsibility statement…."

---

[1] Centura's counsel has conferred with Plaintiff's counsel by telephone about whether the deficiencies in the Complaint argued herein are correctable by amendment in compliance with Judge Brimmer's Practice Standard III.F.2.a. Plaintiff does not contend they are.

[2] Plaintiff does not allege diversity jurisdiction over his individual claims and the Complaint shows his claims do not satisfy the $75,000 amount in controversy requirement of 28 U.S.C. § 1332(a).

1

*Complaint,* ¶ 24.  More than two-thirds of the putative class  members are citizens of Colorado. *Exhibit A – Affidavit of Kris Ordelheide,* ¶¶ 8-10 .  Plaintiff asserts federal jurisdiction under 28 U.S.C. 1332(d)(2).  *Complaint,* ¶ 6.

Plaintiff claims Centura's contract with patients "requires that it provide … an estimate of the amount patient will have to pay out of pocket for the procedure, after third party payors such as Medicare and private insurance pay the amounts they cover."  *Complaint,* ¶ 1; *see also* ¶¶ 4, 9, 12, 33, 38, 40, 44.  Plaintiff claims Centura commits "systemic breach[es]" of its contract by failing to provide such an estimate of the patient's out of pocket responsibility."  *Id.*  Plaintiff underwent knee replacement surgery at a Centura operated hospital in Colorado in 2019.  *Id.,* ¶ 4.  Plaintiff was covered by Medicare and Blue Cross. *Exhibit D to Affidavit of Kris Ordelheide*.  The total bill for his surgery was $81,032.73. *Id.* Medicare and Blue Cross paid $79,816.00.  *Id.*  Plaintiff's personal responsibility was for $1,216.73.  *Id. See also Complaint,* ¶ 4.  The $1,216.73 charge was for self-administered medications ordered by Plaintiff's doctors and not covered by Medicare.  *Exhibit D to Affidavit of Kris Ordelheide*. Centura provided Plaintiff a 60% discount of $730.04.  *Exhibit D to Affidavit of Kris Ordelheide*.  Plaintiff paid the balance of $486.69. *Id.*  The Complaint pleads three causes of action: 1) breach of contract, 2) breach of contract: the implied covenant of good faith and fair dealing, and 3) unjust enrichment.

Before his surgery, Plaintiff signed two documents that refer to estimates and together comprise the contract.  One was titled "Hospital Service Agreement – Patient-Hospital Contract." (HSA)  *Exhibit B to Affidavit of Kris Ordelheide*.  The other was titled "Patient Bill of Rights." (PBR)  *Exhibit C to Affidavit of Kris Ordelheide.*  The contract is expressly referred to in the Complaint.  *See Complaint,* ¶¶ 4, 9, 12-13. Paragraph 5 of the HSA states:

2

> FINANCIAL AGREEMENT.  **I understand that there is no guarantee of reimbursement or payment from any insurance company or other payer.  I understand this Agreement is a contract and obligated me to pay all charges for my treatment not paid by my insurer or any other payer source.** … **I acknowledge it may not be possible to state in advance which specific supplies and services will be part of my treatment.  I acknowledge I have the right to receive an estimate of the facility's average charge for treatment that are frequently performed on an in-patient, outpatient, or surgical procedures.  If I receive an estimate of charges, I acknowledge that that Hospital is acting in good faith in providing such an estimate.  I acknowledge that any estimate is not binding and that the charges I am personally obligated to pay may be more than the estimated charge for my specific treatment.  I acknowledge this Contract means I have full financial responsibility for, and agree to pay, all charges for the Hospital** and of physicians rendering services **not otherwise paid by my health insurance or other payer** based upon the Hospital's pre-determined Chargemaster rates…
>
> …I agree to pay all legal expenses necessary for the collection of any debt or any action on this Contract.  **I hereby acknowledge and agree that the Hospital has not made any implied representations about the charges I am personally obligated to pay.**  I understand the charges I will be charged for my treatment are pre-determined rates based upon the Chargemaster in effect at the time of my treatment.  **I have agreed to pay the Hospital's Chargemaster rates for the treatment I receive.**  (emphasis added)

Contrary to the characterization of this contract provision in the Complaint, it did <u>not</u> contractually obligate the hospital to provide an estimate of what the patient may personally owe.  Moreover, this provision expressly states any estimate is not binding and the patient may have to pay more than the estimate.  The reason is also explained in the contract, *i.e.* it may not be possible to state in advance what services and supplies will be part of the treatment.  The PBR provides:

> **You have the right to**: ***
> **Request** and receive, prior to the initiation of non-emergent care or treatment, the charges (or estimate of charges) for routine, usual and customary services and any co-payment, deductible, or non-covered charges, as well as the facility's general billing procedures including receipt and explanation of an itemized bill.  This right is honored regardless of the source(s) of payment. (emphasis added)

3

The Complaint does not allege Plaintiff made such a request. Nor is the putative class limited to patients who made such a request. The PBR also states, "You [the patient] have the responsibility to… Understand and honor financial obligations related to your care, including understanding your own insurance coverage." Plaintiff was contractually obligated to understand his own insurance coverage. Conversely, Centura had no contractual obligation to understand Plaintiff's insurance coverage. The contract provisions are unambiguous and are fatal to Plaintiff's claims.

## II.   THE CASE SHOULD BE DISMISSED UNDER RULE 12(b)(1) FOR LACK OF SUBJECT MATTER JURISDICTION.

A federal court has an independent obligation to examine its own jurisdiction at every stage of the proceeding. *Amazon, Inc. v. Dirt Camp, Inc.,* 273 F.3d 1271, 1276 (10th Cir. 2001). "The party invoking federal jurisdiction bears the burden of establishing such jurisdiction as a threshold matter." *Radil v. Sanborn W. Camps, Inc.,* 384 F.3d 1220, 1224 (10th Cir. 2004). A federal court must "presume no jurisdiction exists absent an adequate showing by the party invoking federal jurisdiction that jurisdiction exists; that showing must be made by a preponderance of the evidence." *Dutcher v. Matheson,* 840 F.3d 1183, 1189 (10th Cir. 2016)(citations and internal quotations omitted). Rule 12(b)(1) challenges are generally presented in one of two forms: "[t]he moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004). When reviewing the factual basis on which subject matter jurisdiction rests, the district court does not presume the truthfulness of the complaint and "has wide discretion to allow affidavits, other documents, and a limited

4

evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995)(citations omitted).

Plaintiff asserts jurisdiction under 28 U.S.C. §1332(d)(2). §1132(d)(4) states:

> A district court **shall decline to exercise jurisdiction** under paragraph (**2**)--
> (**A**)(i) **over a class action in which**--
> > (**I**) **greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed**;
> > (II) at least 1 defendant is a defendant--
> > > (aa) from whom significant relief is sought by members of the plaintiff class;
> > > (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
> > > (cc) who is a citizen of the State in which the action was originally filed; and
> > (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
> 
> (ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons; or
> 
> (**B**) **two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.** (emphasis added)

§1332(d)(4)(A) defines the mandatory "local controversy" exception to CAFA jurisdiction. *Coffey v. Freeport McMoran Copper & Gold*, 581 F.3d 1240, 1243–44 (10th Cir. 2009). §1332(d)(4)(B) defines the mandatory "home state" exception. *Dutcher v. Matheson*, 840 F.3d 1183, 1193–94 (10th Cir. 2016). The existence of either mandatory exception requires the Court decline jurisdiction under §1332(d)(2). *See Foley v. Cordillera Golf Club, LLC*, 12-CV-0351-WJM-KMT, 2012 WL 1144856, at *2–3 (D. Colo. 2012)(applying CAFA's mandatory exceptions).

An element of both mandatory exceptions is met here: Centura is a citizen of Colorado, the State where this action was originally filed. A corporation is a citizen of any State in which it is

5

incorporated or in which it has its principal place of business. 28 U.S.C. §1332(c)(1); *Baker v. PDC Energy, Inc.*, 14-CV-02537-RM-MJW, 2014 WL 7445626, at *3 (D. Colo. Dec. 30, 2014). Because Centura is a Colorado nonprofit corporation headquartered in Colorado, it is indisputably a citizen of Colorado. *Complaint,* ¶ 5; *Exhibit A – Affidavit of Kris Ordelheide,* ¶ 2.

Another element of both mandatory exceptions is that two-thirds or more of the putative class are citizens of Colorado. Attached as *Exhibit A* is the Affidavit of Kris Ordelheide, Centura's Senior Vice President and General Counsel, and supporting data. It establishes that for Fiscal Years 2018-20, over 90% of Centura hospital patients listed a Colorado home address.

For purposes of federal diversity jurisdiction, an individual's state citizenship is equivalent to domicile. *Smith v. Cummings,* 445 F.3d 1254, 1259 (10th Cir. 2006). "Residence establishes prima facie indication of domicile, but it must be accompanied by an intent to remain in that state." *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 463 F.Supp.2d 583, 592 (E.D. La. 2006), *aff'd* 485 F.3d 804 (5th Cir. 2007). There is a rebuttable presumption in favor of an established domicile over a newly acquired one. *Dumas v. Warner Literary Grp., LLC*, 16-CV-00518-RM-NYW, 2016 WL 10879185, at *2 (D. Colo. 2016).

*Preston* applied the mandatory exceptions to CAFA jurisdiction in a class action against a hospital system and is thus a helpful example of analyzing information about the domiciles of members of a class comprised of hospital patients. The putative class in *Preston* were individuals treated at defendant hospitals in the wake of Hurricane Katrina. The court ordered the hospitals to provide data on patients' addresses. *Preston,* 463 F.Supp.2d at 592–94.

> The Court also ordered Memorial to provide the percentage of patients in the entire Memorial facility with Louisiana addresses (Rec.Doc.43).

> This information presents a valuable indication of the citizenship of the proposed class members …. *** Additionally, Memorial's Medical Records Supervisor provided a second affidavit in which he attests that of the 256 patients hospitalized in the entire hospital at the time when Hurricane Katrina struck on August 29, 2005, only seven of those patients, or 2.73% of the total patient population, indicated that they were residents of other states (Rome Aff., Sept. 18, 2006).

*Id.,* 463 F.Supp.2d at 593.  The *Preston* court used this data to determine the mandatory exceptions to CAFA jurisdiction applied.  Centura has provided this Court with similar data.

An element of the "local controversy" exception, but not the "home state" exception, is that the principal injuries from the defendant's alleged wrongdoing occurred in the State where the action was filed.  Plaintiff claims the injuries to putative class members flowed from not receiving estimates of personal "out of pocket" responsibility for the hospital bill.  For example, Plaintiff alleges the failure to provide estimates of "out of pocket" responsibility makes it impossible to "determine whether he or she can afford the procedure at that time, financially plan to pay for the procedure, avoid most unexpected charges, guard against overbilling and, in many instances, to shop around to obtain the best price for the medical care." *Complaint,* ¶ 11.  Since 90% or more of the putative class lived in Colorado, these sorts of injuries were necessarily incurred in Colorado.

The elements of both the mandatory "local controversy" and "home state" exceptions to CAFA jurisdiction are present and require dismissal for lack of subject matter jurisdiction.

Finally, there is a discretionary exception that allows a federal court to decline to exercise jurisdiction over a class action that is otherwise covered by CAFA based on six enumerated factors. 28 U.S.C. § 1332(d)(3).  *Dutcher v. Matheson*, 840 F.3d 1183, 1194 (10th Cir. 2016).  There are two pre-requisites to the discretionary exception: 1) greater than one-third but less than two-thirds of the members of the putative class are citizens of the State where the case was filed, and 2) the

primary defendants are citizens the State where the case was filed. *Id.* Centura is the only defendant and so the second pre-requisite is satisfied. If the Court concludes the evidence does not establish more than two-thirds of the putative class are citizens of Colorado, it is impossible to conclude that Colorado citizens comprise less than one-third of the putative class. Consideration of the six factors in §1332(d)(3) warrant the Court exercising its discretion to decline jurisdiction.

### III. THE CASE SHOULD BE DISMISSED UNDER RULE 12(b)(6) FOR FAILURE TO STATE A PLAUSIBLE CLAIM.

#### A. Rule 12(b)(6) Standards.

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility in this context means the plaintiff pled factual content which allows "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The court may consider documents referred to in the Complaint that are central to the plaintiff's claims and whose authenticity is not disputed. *TBM Land Conservancy, Inc. v. Nextel W. Corp.*, 131 F.Supp.3d 1130, 1132 (D. Colo. 2015). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quotations omitted).

Under *Twombly/Iqbal,* two prongs of analysis are required. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id*. at 679–81. Second, the court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. The court should not accept conclusory allegations without

supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir.1998). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted). Courts, "are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal,* 556 U.S. at 678. Whether a contract is ambiguous is a question of law. *Pepcol Mfg. Co. v. Denver Union Corp.,* 687 P.2d 1310, 1314 (Colo. 1984). "[C]ontract interpretation is a question of law for the court to decide." *Copper Mountain, Inc. v. Indus. Sys., Inc.,* 208 P.3d 692, 696 (Colo.2009). The Colorado Supreme Court has instructed courts to "interpret a contract 'in its entirety with the end in view of seeking to harmonize and to give effect to all provisions so that none will be rendered meaningless.'" *Id. quoting Pepcol,* 687 P.2d at 1313. "It is axiomatic that in the absence of an ambiguity a written contract cannot be varied by extrinsic evidence." *Id.* at 1314. A Rule 12(b)(6) motion may be granted by applying these contract interpretation principles. *FirsTier Bank v. F.D.I.C.,* 935 F.Supp.2d 1109, 1126 (D. Colo. 2013).

    **B.** **The Unambiguous Contract Defeats Plaintiff's Claims.**

All of Plaintiff's claims are premised on the contention that Centura is contractually required to provide patients "an estimate of the amount the patient will have to pay out of pocket for the procedure, after third party payors such as Medicare and private insurance pay the amounts

they cover." *Complaint,* ¶ 1; *see also* ¶¶ 4, 9, 12, 33, 38, 40, 44. Plaintiff claims Centura commits "systemic breach[es]" of its contract by failing to provide such an estimate of the patient's out of pocket responsibility. *Id.* These allegations are legal conclusions that must be disregarded in a *Twombly/Iqbal* analysis. The contract Plaintiff signed is not ambiguous.[3] The Court may interpret the contract and determine as a matter of law it does not require Centura to provide "an estimate of the amount patients will have to pay out of pocket" as the Complaint alleges. Such a legal interpretation of the contract is fatal to each of Plaintiff's claims.

By signing the HSA, Plaintiff acknowledged and agreed to the following unambiguous statements in ¶ 5:

- "I understand this Agreement is a contract…."
- The Agreement "obligated me to pay all charges for my treatment not paid by my insurer any other payer source."

---

[3] The Colorado Court of Appeals recently held an earlier version of Centura's HSA is unambiguous. *Centura Health Corp. v. French,* 2020 COA 85, ¶ 36, --- P.3d --- (Colo. App. May 28, 2020). The *French* decision also set forth the following contract interpretation principles:

> In determining whether a contractual provision is ambiguous, we examine and construe the language in harmony with the plain and generally accepted meaning of the words employed. *Parrish Chiropractic Ctrs., P.C. v. Progressive Cas. Ins. Co.*, 874 P.2d 1049, 1055 (Colo. 1994). We also examine the entire contract and do not view clauses or phrases in isolation in order to give effect to all provisions. *Mid Century Ins. Co. v. Gates Rubber Co.*, 43 P.3d 737, 739 (Colo. App. 2002); *Town of Silverton v. Phx. Heat Source Sys., Inc.*, 948 P.2d 9, 11 (Colo. App. 1997).
>
> Mere potential for more than one interpretation does not, by itself, create an ambiguity. *Branscum v. Am. Cmty. Mut. Ins. Co.*, 984 P.2d 675, 678 (Colo. App. 1999). And mere disagreement between the parties about the meaning of a term does not create an ambiguity. *Morley v. United Servs. Auto. Ass'n*, 2019 COA 169, ¶ 16. Nor may an unambiguous contract be made ambiguous by extrinsic evidence. *Hansen*, ¶ 27. Rather, ambiguity must first be shown to exist on the face of the contract. *Parrish Chiropractic Ctrs., P.C.*, 874 P.2d at 1056.

*Id.,* 2020 COA 85 at ¶¶ 18-19

- "I acknowledge <u>it may not be possible to state in advance</u> which specific supplies and services will be part of my treatment."[4]
- "I acknowledge I have the right to receive an estimate of the facility's average charge for … surgical procedures."
- "<u>If</u> I receive an estimate of charges, I acknowledge that the Hospital is acting in <u>good faith</u> in providing such an estimate."
- "I acknowledge that <u>any estimate is not binding</u> and that <u>the charges I am personally obligated to pay may be more than the estimated charge</u> for my specific treatment."
- "I acknowledge <u>this Contract means I have full financial responsibility for, and agree to pay, all charges for the Hospital</u>… <u>not otherwise paid by my health insurance</u> or other payer…."
- "I hereby acknowledge and agree that <u>the Hospital has not made any implied representations about the charges I am personally obligated to pay</u>."
- "I have agreed to pay the Hospital's Chargemaster rates for the treatment I receive." (emphasis added).

The PBR Plaintiff signed informed him of his right to "**request**" an estimate of "any co-payment, deductible, or non-covered charges."[5] *Exhibit C to Affidavit of Kris Ordelheide,* p. 1, ¶ 28.  The Complaint does not allege Plaintiff made any such request.  The PBR Plaintiff signed also stated he had the "responsibility to…  Understand and honor financial obligations related to your care, including understanding your own insurance coverage." *Exhibit C to Affidavit of Kris Ordelheide,* p. 2, ¶ 10.

Plaintiff unambiguously contracted to pay all hospital charges not paid by insurance.  The unambiguous contract did <u>not</u> require Centura to provide Plaintiff with an estimate of his out of pocket responsibility.  On the contrary, the unambiguous contract expressly stated no implied

---

[4] This contract term recognizes the legal reality that only physicians are licensed to practice medicine and can order procedures and medications.  Colorado follows the "corporate practice of medicine" doctrine that precludes hospitals from dictating how physician's practice. *Kellner v. Schultz,* 937 F.Supp.2d 1319, 1326 (D.Colo.2013)(*citing Estate of Harper ex rel. Al–Hamim v. Denver Health and Hosp. Authority*, 140 P.3d 273, 275 (Colo.App.2006));  C.R.S. § 12–36–134.
[5] C.R.S. § 6-20-101(1) requires hospitals to disclose to patients they have the right to receive notice of the "<u>average facility charge</u>" for a treatment that is "frequently performed" "when requested."  The HSA and PBR unambiguously complied with that statutory requirement.

11

representations had been made about "the charges I am personally obligated to pay."  As a matter of law, the unambiguous contract provisions refute the conclusory allegations in the Complaint.

### C. Plaintiff Failed to State a Plausible Breach of Contract Claim.

> To state a claim for breach of contract under Colorado law, a plaintiff must sufficiently plead the following elements: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff. *W. Distrib. Co. v. Diodosio,* 841 P.2d 1053, 1058 (Colo.1992).

*PayoutOne v. Coral Mortgage Bankers*, 602 F. Supp. 2d 1219, 1224 (D. Colo. 2009).  Centura disputes the third and fourth elements.  Interpreting the unambiguous contract shows Centura had no contractual obligation to provide Plaintiff an estimate of his personal, individualized, out of pocket obligations.  Plaintiff suffered no cognizable damage from not receiving such an estimate.

### D. Plaintiff Failed to State a Plausible Breach of Implied Duty of Good Faith and Fair Dealing Claim.

> "Colorado, like the majority of jurisdictions, recognizes that every contract contains an implied duty of good faith and fair dealing," *Amoco Oil Co. v. Ervin,* 908 P.2d 493, 498 (Colo.1995), intended to "ensure that a party is not deprived of the fruits of a contract by the arbitrary or unreasonable actions of the other party." *Salt Lake Tribune Publ'g Co., LLC v. AT & T Corp.,* 320 F.3d 1081, 1104 (10th Cir.2003). This duty "applies when one party has discretionary authority to determine certain terms of the contract, such as quantity, price, or time." *Amoco,* 908 P.2d at 498.

*Clark v. Green Tree Servicing LLC*, 69 F. Supp. 3d 1203, 1220–21 (D. Colo. 2014).

> Where the subject in dispute "is expressly covered by the contract ... the implied duty to perform in good faith does not come into play." *Dave Greytak Enters. v. Mazda Motors of Am.,* 622 A.2d 14, 23 (Del.Ch.1992).

*Salt Lake Tribune Pub. Co., LLC v. AT & T Corp.*, 320 F.3d 1081, 1103–04 (10th Cir. 2003).  *ADT Security Servs., Inc. v. Premier Home Protection, Inc.*, 181 P.3d 288, 293 (Colo. App. 2007). "The implied covenant cannot… be used to impose obligations that conflict with the express terms of the agreement or to 'inject substantive terms into the contract.'" *TBM Land Conservancy, Inc.*, 131

F.Supp.3d at 1136–37 (*quoting ADT Security Servs., Inc. v. Premier Home Protection, Inc.*, 181 P.3d 288, 293 (Colo. App. 2007)).

Plaintiff's allegations supporting his breach of the implied duty of good faith and fair dealing claim are entirely conclusory. Plaintiff alleged "Based on the terms of the contracts… [he and class members] could justifiably expect defendant to provide them an estimate of the amount they will have to pay out of pocket for the procedure." *Complaint, ¶* 38. This allegation is an attempt to rewrite the contract and impose an obligation that conflicts with its express terms. As set forth above, the contract expressly stated the hospital made no implied representations had been made about "the charges I am personally obligated to pay." *Exhibit B to Affidavit of Kris Ordelheide, HSA* ¶ 5. And the contract does not require the hospital to provide a patient with an estimate of his or her personal, individualized, out of pocket charges, but rather, an estimate of average facility charges for commonly performed procedures. C.R.S. § 6-20-101(1).

Plaintiff's breach of the implied covenant of good faith and fair dealing claim is similar to the one this Court dismissed under Rule 12(b)(6) in *TBM Land Conservancy, Inc. v. Nextel W. Corp.,* 131 F.Supp.3d 1130 (D. Colo. 2015). The contract in *TBM* was a site lease for cell towers that gave Nextel the right to terminate the lease for technological reasons. The plaintiff argued the implied covenant required Nextel "produce technological evidence/data which would establish… that the site was/is no longer appropriate for its operations for technological reasons." *Id.* at 1136. This Court observed "Plaintiff points to no contractual language that imposes such a requirement, and the Court discerns none." *Id.* at 1137. Likewise, here there is no contractual language

13

requiring Centura to provide an estimate of the patient's individualized out of pocket financial responsibility.[6] Therefore, the breach of implied duty of good faith claim should be dismissed.

### E. Plaintiff Failed to State a Plausible Unjust Enrichment Claim.

An unjust enrichment claim requires a showing of three elements: "that (1) at plaintiff's expense (2) defendant received a benefit (3) under circumstances that would make it unjust for defendant to retain the benefit without paying." *Robinson*, 179 P.3d at 1007. "Unjust enrichment is a claim in quasi-contract based on principles of restitution." *W. Ridge Grp., LLC v. First Trust Co. of Onaga*, 414 Fed.Appx. 112, 120 (10th Cir. 2011) (unpublished) (applying Colorado law). "In general, a party cannot recover for unjust enrichment by asserting a quasi-contract when an express contract covers the same subject matter because the express contract precludes any implied-in-law-contract." *Interbank Invs., LLC v. Eagle River Water & Sanitation Dist.*, 77 P.3d 814, 816 (Colo. App. 2003). Colorado courts recognize two exceptions to this general rule. "First, a party can recover on a quasi-contract when the implied-in-law contract covers conduct outside the express contract or matters arising subsequent to the express contract. Second, a

---

[6] The practical reality that the amount of a hospital bill cannot be set before the patient is admitted and treated has been recognized by courts around the country, including Colorado. *See Centura Health Corp. v. French,* 2020 COA 85 at ¶¶ 22-25 (collecting cases). For example, the Third Circuit stated in *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 264 (3d Cir. 2008):

> The price term "all charges" is certainly less precise than price term of the ordinary contract for goods or services in that it does not specify an exact amount to be paid. It is, however, the only practical way in which the obligations of the patient to pay can be set forth, given the fact that nobody yet knows just what condition the patient has, and what treatments will be necessary to remedy what ails him or her.[1]
>
> > [FN 1] This variation among hospital patients raises the question whether class action status would be appropriate for this case. Each member of the class would have had a different condition, requiring different remedies, and a different calculation of a "reasonable" fee.
>
> Besides handing the patient an inches-high stack of papers detailing the hospital's charges for each and every conceivable service, which he or she could not possibly read and understand before agreeing to treatment, the form contract employed by St. Mary's is the only way to communicate to a patient the nature of his or her financial obligations to the hospital. Furthermore, "it is incongruous to assert that [a hospital] breached the contract by fully performing its obligation to provide medical treatment to the plaintiff[ ] and then sending [him] [an] invoice[ ] for charges not covered by insurance." *Burton v. William Beaumont Hosp.,* 373 F.Supp.2d 707, 719 (E.D.Mich.2005).

14

> party can recover on a quasi-contract when the party will have no right under an enforceable contract," such as "when an express contract failed or was rescinded." *Id.* (citations and quotations omitted).

*Leighton v. City & Cty. of Denver*, 14-CV-02812-PAB-NYW, 2015 WL 5532751, at *8 (D. Colo. Sept. 21, 2015). In *Leighton,* this Court dismissed the unjust enrichment claim. In *Leighton,* like here, the plaintiff did not dispute the existence or validity of an express contract. Here, the express contract between the parties addresses the subject of estimates. In *Leighton,* the Court held "the express terms of the written contract override any purported implied contract" and dismissed the unjust enrichment claim. The same reasoning applies here. Moreover, the Complaint contains no allegations of facts – as distinct from conclusions – supporting Plaintiff's unjust enrichment claim. It must therefore be dismissed.

## IV.   CONCLUSION

For the reasons stated above, Plaintiff's claims should be dismissed without prejudice under Rule 12(b)(1) for lack of subject matter jurisdiction. If the Court determines federal jurisdiction exists, for the reasons stated above, the Plaintiff's claims should be dismissed with prejudice under Rule 12(b)(6) for failure to state a claim.

DATED:  August 17, 2020.

Respectfully submitted,

*/s/ Traci Van Pelt*
Traci Van Pelt, Esq., Attorney No. 26483
McCONNELL VAN PELT, LLC
4700 South Syracuse Street, Suite 200
Denver, Colorado 80237
Telephone No.: 303.480.0400
Email: tvanpelt@mvp-legal.com

ATTORNEYS FOR DEFENDANT

15

### **CERTIFICATE OF SERVICE (CM/ECF)**

I HEREBY CERTIFY that on this 17th day of August 2020, the foregoing **MOTION TO DISMISS** was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of the filing to the following counsel of record:

| | |
|---|---|
| Jordon R. Harlan, Esq. | Timothy G. Blood |
| Harlan Law, PC | Aleksandr J. Yarmolinets |
| 50 River Oaks Drive, Unit 115 | 501 West Broadway, Suite 1490 |
| Durango, Colorado 81303 | San Diego, CA 92101 |
| Tel: (970) 462-9599 / (619) 870-0815 | Tel: 619-338-1100 |
| jordon@harlanpc.com | tblood@bholaw.com |
| BLOOD HURST & O'REARDON, LLP | ayarmolinets@bholaw.com |
| *Attorneys for Plaintiff Franklin E. Walter* | *Attorneys for Plaintiff Franklin E. Walter* |

*/s/ Elizabeth Ponce de Leon*
Elizabeth Ponce de Leon, Paralegal

16